**This order is SIGNED.**

**Dated: October 27, 2020**



**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 19-24265 |
| PALMER EQUIPMENT, LLC, | |
| | Chapter 13 |
| Debtor. | |
| | Judge William T. Thurman |

**MEMORANDUM DECISION ON MOTION TO VACATE ORDER APPROVING
SETTLEMENT AND DISTRIBUTION OF FUNDS**

## BACKGROUND

This case is before the court on what TRC Ranch, LLC has called "Trial Brief in Support of Motion to Amend Ruling, or More Precisely, Motion to Reconsider." The Court will refer to this as the Motion to Reconsider. In this motion, it argues that it was not given notice of a sale of farm equipment by the Debtor or a settlement agreement and motion to distribute the proceeds from sale when the parties to the sale and settlement knew that TRC Ranch, LLC had claimed a

1

property interest in the equipment. It further asks the Court to vacate the sale and order approving settlement. A verbal ruling on the motion was given on September 30, 2020. This memorandum decision is essentially what was stated on the record.

## NOTICE AND JURISDICTION

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334 and has been expressly consented to by the parties. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M), and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1408. Notice of the hearing is found to be proper in all respects.

## FINDINGS OF FACT

Mr. Russell Powell ("Powell"), the agent of TRC Ranch, LLC ("TRC") originally made a motion *pro se* and subsequently as required by our local rules, obtained counsel for his company by Mr. Ted Cundick. Mr. Cundick filed a "Reply in Support of the Motion to Amend, or More Precisely, a Motion to Reconsider." This Reply and Motion to Reconsider is what the Parties and the Court considered in the evidentiary hearing held on September 22, 2020. The Court notes that the motion to reconsider is most likely misnamed. The Court assumes this is, in reality, a motion for relief pursuant to F.R.C.P. 60(b). However, as the parties sometimes refer to it as the Motion to Reconsider, and to avoid some confusion as to what is being addressed, the Court may refer to it also as a motion to reconsider. After taking evidence and hearing argument from all parties, the Court makes the following findings.

Palmer Equipment, LLC ("Palmer Equipment") filed for chapter 11 on June 11, 2019 through its agent, Mr. Ryan Palmer ("Palmer").[1] TRC claimed a property interest in certain equipment that was left in the hands of the Debtor, either through consignment, security interest, or sale.[2] The allegedly consigned equipment was also subject to a security interest claimed by Alta Bank (f/k/a People's Intermountain Bank d/b/a Lewiston State Bank). TRC was the obligor under that security agreement. The Court did not receive legal briefs on the nature of TRC's property interest and reserves judgment on exactly what type of property interest TRC has or had in the equipment, and only determines that TRC has a plausible property claim to the equipment.

TRC is not and was not listed on any of the schedules or creditor matrix but was made aware of the Chapter 11 Bankruptcy through its agent, Mr. Powell. The Court heard the testimony of Ms. Cynthia Johnson ("Johnson"), the loan officer for Lewiston State Bank who was assigned to TRC's account and dealt closely with Powell whom the court finds credible. Through conversations via text messages and phone calls between Palmer and Powell and between Johnson and Powell as early as June 27, 2019, Mr. Powell and TRC were put on actual notice of the Chapter 11 case.[3]

This Court authorized Palmer Equipment to use cash collateral on July 31, 2019 and in that order, the Court expressly reserved judgment on the rights to certain pieces of equipment listed therein, but noted that TRC may have had an interest as either consignor or secured party to the 4 pieces of farm equipment, the proceeds of which are in dispute today.[4]

---

[1] *See* Docket No. 1.
[2] Exhibit JX-C 0279 and JX-A TRC000026.
[3] Joint Hearing Exhibit JX-A and JX-B55 through JX-B62.
[4] *See* Docket No. 67.

In the order authorizing use of cash collateral,[5] the Court ordered the Debtor to hold on to that equipment pending further order of the Court. Following a hearing on November 7, 2019, the Debtor sold those items.[6] Subsequent to the sale, the Debtor, Enhanced Capital Utah Rural Fund, LLC ("Enhanced"), and Alta Bank entered into an agreement for the disposition of the sales proceeds totaling $76,500.[7] Enhanced asserts a blanket security interest in all equipment of the Debtor while Alta Bank asserts a specific security interest in the equipment at issue here. The Debtor filed a motion which represented that only Alta Bank, Enhanced, and the Debtor had an interest in the equipment and scheduled a hearing for settlement of their disputed interests in the sales proceeds on February 6, 2020.[8] The motion was noticed out to the creditors who were on the matrix that day as well. It is undisputed that TRC was not on the matrix and never received formal written notice of that motion or the hearing. The hearing was held February 12, 2020 and the order approving the settlement for disposition of the equipment was entered February 13, 2020. Pursuant to the settlement of the $76,500 in proceeds, Alta Bank and Enhanced each received $32,610.10 and the Debtor retained $11,279.80 for improvements to the equipment. Those funds were turned over to the Debtor's attorneys. Also on February 12, the Court granted the U.S. Trustee's motion to convert the case to one under chapter 7. An order to that effect was entered on February 19, 2020.[9]

The testimony of Mr. Powell at the hearing on the motion shows that the Debtor did attempt to notify TRC of the conversion of the case to chapter 7 via one single text message, which was

---

[5] *See Id*.
[6] *See* Docket No. 82.
[7] This agreement was based on a dispute that Enhanced had a blanket lien on all of Palmer Equipment's inventory and was used to resolve the conflict between competing potential security interests in the equipment.
[8] *See* Docket No. 142.
[9] *See* Docket 156

sent but not received due to Powell's location in a mountainous region of Oregon and the interreference with cellular service at that location. TRC had no knowledge of any kind of the settlement and distribution of proceeds or of the Chapter 7 conversion at that point, but it filed Proof of Claim #56 on April 30, 2020 when it did become aware of the conversion.

To summarize the foregoing, Mr. Powell, and by extension TRC, had actual notice of the Chapter 11 case, but did not have actual or formal written notice of either the settlement or conversion of the case to a chapter 7. There is a disagreement among Alta Bank, Enhanced, the Debtor (and now chapter 7 Trustee), and TRC as to whether the notice of the existence of the Chapter 11 bankruptcy that TRC received was adequate to foreclose its rights as to the specific disposition of the sales proceeds of the property that was sold by the Debtor or that further notice by them to TRC was required.

## CONCLUSIONS OF LAW

### MOOTNESS

As a preliminary matter, the Court would like to discuss Enhanced's position that, even if all allegations of TRC are true and correct, the motion will be mooted by analogy to 11 U.S.C. §363(m). That provision of the code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Enhanced contends that the motion to reconsider is moot, citing *In Re C.W. Min Co.*[10] That case discusses relevant public policies in the finality of bankruptcy sales orders. The 10th Circuit in that case deemed several claims by various parties, who sought to unwind the sale, to be moot under 11 U.S.C. §363(m).

That decision is distinguishable from the present situation. First, textually speaking, the section applies to *unwinding sales* on *appeal*, not in a situation where the sale is being left undisturbed and not in motions for relief from an order under Rule 60(b). Further, the *C.W. Mining* case states that:

> although the appellants bear no burden to produce evidence or argument, the appellants will not overcome a motion to dismiss for § 363(m) mootness simply because the trustee fails to disprove every possible legal remedy imaginable. Instead, the appellants *must at least identify an available remedy that will not affect the sale's validity.*[11]

This language is pertinent because TRC has identified renegotiation or litigation as its remedy of choice if the Motion for Reconsider is granted, specifically stating it does not wish to unwind the sale. Even looking beyond the text, the policy rationale stated in the case seeks to protect purchasers in good faith, such that a purchaser from a bankruptcy estate may know that its interests in the purchased property is sound and will not be disturbed. "Section 363(m)'s protection is vital to 'encourag[ing] buyers to purchase the debtor's property' and thus 'insur[ing] that adequate sources of financing remain available.'"[12]

The remedies requested do not affect the validity of the sale because the bona fide purchaser of the equipment will not be disturbed in its ownership. The buyer of the equipment is

---

[10] *In re C.W. Min. Co.*, 740 F.3d 548, 555 - 57 (10th Cir 2014).
[11] *Id.* at 555 (emphasis added).
[12] *Id.* at 555 (internal citations omitted).

not before the Court. The relief sought here is to void the settlement agreement and order and determining exactly to whom the proceeds should go, rather than the amount of proceeds. Indeed, Alta Bank also identified in its trial brief a potential source for shifting funds: the $11,279.80 which was retained by the Debtor. Accordingly, there are at least two courses of action that have been identified by the parties which do not disturb the sale whatsoever and the motion is not moot.

## NOTICE AND ITS EFFECT

Next, the parties argue the importance and existence of Notice. TRC argues that formal written notice is required when divesting a party of its property interest, while Enhanced and Alta Bank take the position that actual notice to Mr. Powell of the existence of the chapter 11 case suffices to cut off property rights in a bankruptcy sale.

TRC relies on two cases from outside the 10th Circuit to support its position.[13] [14] Both of these cases stand for the proposition that, in chapter 11 bankruptcy cases, before a party loses rights in an asset, it is "entitled to notice of a certain specificity affording it a certain amount of time to prepare for and appear at a hearing at which the court would be asked to rule on the elimination of its interests in the Property."[15]

The Supreme Court has repeatedly held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[16]

---

[13] *Dolittle v. County of Santa Cruz (In re Metzger)*, 346 B.R. 806 (Bankr. N.D. Cal. 2006).
[14] *Arch Wireless , Inc. v. Nationwide Paging (In re Arch Wireless)*, 534 F.3d 76 (1st Cir. 2008).
[15] *Dolittle* at 819.
[16] *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950).

The bankruptcy code generally requires formal written notice for most all matters in the main bankruptcy case pursuant to Bankruptcy Rule 2002(a). Specifically, the motion in question under Rule 9019 directs notice to be given under Rule 2002, which does not include the ability of a party to take advantage of actual notice.

However, there are some proceedings or motions where actual notice to a creditor does indeed foreclose a creditor's rights even without formal notice. One of these is in the context of a discharge in a Chapter 7.[17] In a case decided here in Utah by Judge R. Kimball Mosier, the Court found that a creditor was aware of the liquidation in the bankruptcy case via 2 phone calls from the debtor, despite not being listed on the schedules. When the creditor objected to the dischargability of a debt under 11 U.S.C. § 523(a)(3)(A), the Court concluded that the language of the code was determinative. That provision specifically addresses actual knowledge, so the creditor was bound by that notice and therefore the objection was time barred.

Going on with the discharge analogy, the question remains: whether actual notice may foreclose a creditor's rights outside the scope of the statutory directive in § 523(a)? Based on an explanation given in a later case, the only factor allowing actual notice to foreclose the creditor's due process rights is the specific language of the code.[18] In the case of *In Re Green*, the 10th Circuit explained that "[i]ndeed, because of the specific language of § 523(a)(3)(A) allowing discharge of the debt of a creditor with actual, timely notice, a Chapter 7 creditor holding an unsecured claim does not have the "right to assume" receipt of further notice."[19]

---

[17] *See In re Withers*, 2015 WL 1545932 (Bankr. D. Utah 2015).
[18] *Yukon Self Storage Fund v. Green (In re Green)*, 876 F.2d 854 (10th Cir.1989).
[19] *Id.* at 857.

In contrast, when considering language in a Chapter 11 reorganization, Judge Barrett of our Circuit speaking for the panel stated:

> As specifically applied to bankruptcy reorganization proceedings, ... a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has a "right to assume" that he will receive all of the notices required by statute before his claim is forever barred.[20]

The difference in treatment between a reorganization chapter 11 and a liquidation chapter 7 case is therefore pertinent. On February 19, 2020, the Court entered an order that converted the case from a Chapter 11 to a Chapter 7, and therefore, what notice is required turns first on what chapter the case fell under at the time the property was sold and/or when the application for approval of sales proceeds was presented to the Court and, second, whether any statutory language allows for actual notice.

The only actual notice TRC ever received specifically counseled it as to the nature of the bankruptcy being a Chapter 11 case. The text messages between Palmer and Powell shows discussion of specifically Chapter 11 relief. Not only was there no effective communication of the conversion to Chapter 7, the case was in fact still in chapter 11 at the time of sale and approval of the settlement. Accordingly, as far as Powell and TRC understood, they had a right to receive formal notice because, unlike § 523, nothing in the code sections or rules regarding settlements discusses or allows for actual notice. This is directly in line with Circuit precedent in *In Re Green* and *Reliable*.

Clearly, at some point Powell did receive actual notice of the conversion to Chapter 7, which is why TRC filed claim #56 on April 30. TRC did exactly what actual notice required of it

---

[20] *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984).

9

once it became aware of the conversion to a Chapter 7, but by that time, the property had already been reduced to cash and distributed among Alta Bank, Enhanced, and the Debtors attorneys. Accordingly, the notice of the hearing on disposition of the sales proceeds of equipment claimed by TRC was insufficient to give it an opportunity to be heard and assert its rights in the equipment or its proceeds.

## SUPERSEDEAS BOND

As a final matter, it was suggested by Alta Bank in closing arguments that some sort of bond would be appropriate in order to grant TRC's request for relief. This point was not briefed, so the Court assumes that Alta Bank is suggesting some sort of supersedeas-type bond under Federal Rule of Civil Procedure 62.

The Court disagrees. First and foremost, the order would be *void ab initio* as to the distribution of proceeds and therefore unlike a judgment on appeal. Rule 60(b) "is not a substitute for appeal."[21] A supersedeas bond is sometimes used to secure an amount if the appellant loses and becomes insolvent in the interim. The bond essentially acts as a security for the judgment holder's contingent right to pursue the judgment, which is conditioned on successfully pursuing the appeal. Alta Bank appears to arguably have a first lien interest in the sales proceeds but recognizes that Enhanced disputes that. As such, neither Alta Bank nor Enhanced have a contingent right to any portion of the proceeds akin to a judgment in need of security without TRC's ability to first exercise its due process rights. Put differently, those creditors were obligated to give some sort of notice to TRC that its rights in the property were in jeopardy of being lost or

---

[21] *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (citing *Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979)).

seriously and negatively impacted before disposing of the sales proceeds unlike a judgment award that might be sought to be enforced for a specific dollar amount.

Rule 62 specifically allows for a bond for a stay of the proceedings, not when an earlier proceeding is voided. Without an immediate right to any portion, there is no amount to secure, unlike a supersedeas bond on appeal. Here, there was no prevailing party and there is already a deficiency against TRC which Alta Bank acknowledged when it agreed in the settlement agreement to accept less that what was owed by TRC. At worst if TRC's motion is granted, the deficiency against it would simply be increased. Therefore, as the Court sees it, the right of Alta Bank to pursue TRC for the deficiency is essentially the same no matter the result of the renegotiations or the litigation of property rights. The amount of deficiency will either go up or down by the $32,610.10 Alta Bank received. Based on the representations to the court, the total amount owed by TRC to Alta Bank was far in excess of the $32,610.10.

## **CONCLUSION**

In the Court's opinion, this constitutes the type of prejudice contemplated by TRC's motion to vacate under 60(b). The lack of notice prevented it from participating in the negotiations that could have resulted in more cash for Alta Bank. Said another way, the actual prejudice that TRC suffered was related to the amount of deficiency that Alta Bank is now pursuing. This is material because the consigned equipment was subject to a security agreement where TRC was the obligor. Now that the sales proceeds have been divvied up among three parties including Alta Bank, there is a deficiency still owed, which could possibly have been reduced or eliminated if TRC would have been able to participate through formal written notice. The Court is not ruling on whether TRC would win a dispute with Alta Bank, the Debtor's attorneys or Enhanced, only that TRC failed to receive adequate notice to be able to assert its rights.

Keeping in mind that this motion is not moot, as might have been argued under 11 U.S.C. § 363(m), and that no formal notice was given, these are the circumstances for which Rule 60(b) exists. TRC made its motion under both 60(b)(4) and (6). Rule 60(b)(4) allows for relief from judgment due to the judgment being void and 60(b)(6) for "any other reason that justifies relief." "Rule 60(b)(6) relief may not be premised on one of the grounds enumerated in clause (b)(1) through (b)(5)."[22] Because of the prejudice TRC has suffered through the due process violation from lack of notice, the judgement is void for due process reasons under 60(b)(4) only. Subsection (6) may only be invoked for reasons not contained in the first five subsections. No bond needs to be posted for TRC to pursue negotiations or litigation concerning the proceeds from sale.

Based on the reasoning just stated, the Court finds cause and TRC Ranch, LLC's Motion to Reconsider the order entered on February 13, 2020 at docket 151 (or more appropriately, the motion for relief from the order) is GRANTED. Again, the Court makes no ruling on how the proceeds should now be divided up, as that will either take place by further negotiations among the parties or further litigation as to the extent, priority and amount of the various parties' claims.

---

[22] *State Bank of S. Utah v. Gledhill (In re Gledhill),* 76 F.3d 1070, 1080 (10th Cir. 1996).